Craig M. Palik
Steven L. Goldberg (*pro hac vice)*
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
cpalik@mhlawyers.com
sgoldberg@mhlawyers.com
(301) 441-2420
Counsel to *2626 Penn LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **IN RE** | * | |
| | | **Case No. 24-00345-ELG** |
| **2626 PENN LLC** | * | |
| | | **Chapter 11** |
| | * | |
| **Debtor.** | | |
| | * | |

**CHAPTER 11 PLAN OF LIQUIDATION**

2626 Penn LLC, Debtor and Debtor-in-Possession (the "Debtor" or "Plan Proponent"), proposes the following Chapter 11 Plan of Liquidation (the "Plan") to resolve the outstanding Claims against and Equity Interests in the Debtor. The Debtor has the right to modify this Plan before or after confirmation and before consummation of this Plan, but only in accordance with the Bankruptcy Code. All Claims against and Equity Interests in the Debtor, absolute or contingent, including all Claims arising from the rejection of Executory Contracts and/or Unexpired Leases, whether resulting in an Allowed Claim, and all Holders of all Claims and Equity Interests shall be bound by the provisions of this Plan.

Reference is made to the Disclosure Statement (the "Disclosure Statement"), filed contemporaneously with this Plan, for a summary and analysis of this Plan.

## ARTICLE I
## DEFINITIONS

1.01 Rules of Interpretation. Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or the neuter gender shall include the masculine, the feminine and the neuter. The words, "herein," "hereof," "hereto," "hereunder" and others of similar import, refer to this Plan as a whole and not to any particular section, subsection, clause or paragraph contained in this Plan. Captions and headings to Articles, sections, paragraphs and exhibits are included for convenience of reference only and are not intended to be part of or to affect the interpretation of this Plan. The rules of construction set forth in Section 102 of the

Bankruptcy Code shall apply to this Plan. In the event of any inconsistency between or among this Plan, the Disclosure Statement and the Confirmation Order, this Plan shall take precedence over the Disclosure Statement, and the Confirmation Order shall take precedence over this Plan and the Disclosure Statement.

1.02 Definitions. Unless the context requires otherwise, the following words and phrases shall have the meaning set forth below when used in an initially capitalized form in this Plan. Any word or phrase used in this Plan that is not defined in this Plan will have the meaning ascribed to that term in or under the Bankruptcy Code or the Bankruptcy Rules:

"Administrative Expense" shall mean, collectively, (a) any cost or expense of administration of the Chapter 11 Case allowable under sections 503, 507(a)(2), or 507 (b) of the Bankruptcy Code, including, without limitation, the fees and expenses of professionals employed by the Debtor pursuant to Article II of this Plan (including without limitation costs and expenses arising from and after the Confirmation Date through the Effective Date), and (b) any fees or charges assessed against the Debtor's Estate under Section 1930, Title 28, United States Code.

"Administrative Claims Bar Date" shall mean the date that is thirty (30) days after the Effective Date. The Administrative Claims Bar Date shall not constitute a bar against (a) Professional Fee Claims for any Administrative Expense for services rendered in connection with the Chapter 11 Cases, or (b) payment of any fees or charges assessed against the Debtor's Estate under Section 1930, Title 28, United States Code, whether accruing prior to or after the Administrative Claims Bar Date.

"Allowed" shall mean, except as otherwise provided herein: (a) a Claim of any kind that has been allowed by a Final Order; (b) a Claim of any kind that is either not Disputed or otherwise subject to an objection as of the Claims Objection Bar Date; (c) a Claim that has been scheduled by the Debtor in its Schedules other than those scheduled as disputed, contingent (except as identified herein) or unliquidated and is not Disputed or is otherwise subject to an objection as of the Claims Objection Bar Date; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed before the entry of the Confirmation Order and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtor of the amount and nature of Claim or Equity Interest executed on or after the entry of the Confirmation Order; or (iii) in or pursuant to any contract, instrument, or other agreement entered into or assumed in connection herewith; (e) a Claim that is allowed pursuant to the terms hereof; or (f) a Disputed Claim as to which a proof of Claim was timely filed and as to which no objection has been filed as of the Claims Objection Bar Date.

"Assets" shall mean, in the aggregate, the Property (as that term is defined herein) and certain personal property used at or in connection with the Property.

"Avoidance Action" shall mean any cause of action arising in these Chapter 11 Case to avoid a transfer of property of the Debtor or the Debtor's Estate or to recover such property, or the value of such property, pursuant to Sections 542, 543, 544, 545, 547, 548, 549, 550 and/or 551 of the Bankruptcy Code, or to recover damages or other monetary relief on account of any violation of the automatic stay pursuant to Section 362 of the Bankruptcy Code.

"Bankruptcy Code" shall mean Title 11 of the United States Code.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Columbia.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

"Bar Date", with respect to non-governmental entities shall mean February 24, 2025, which was the date set by the Bankruptcy Court as the last day by which a creditor that is a non-governmental entity is permitted to file a proof of claim and, with respect to governmental entities, the date that is 180 days after the Petition Date.

"Causes of Action" means, other than Avoidance Actions, any and all claims, actions, adversary proceedings, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments and demands whatsoever, whether pending or not pending, known or unknown, whether or not scheduled as an asset of the Debtor, disputed or undisputed, legal or equitable, absolute or contingent, that are already pending or that have accrued or are accruing to the Debtor or the Estate, or that may be pursued derivatively by or on behalf of the Debtor or the Estate.

"Chapter 11" shall mean Chapter 11 of the Bankruptcy Code.

"Chapter 11 Case" shall mean the above-captioned Chapter 11 bankruptcy case of 2626 Penn LLC.

"Claim" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

"Claimant" shall mean any entity (as defined in the Bankruptcy Code) holding or asserting a Claim against the Debtor.

"Claims Objection Bar Date" means the date by which the Debtor or any other party in interest must object to a Claim, proof of which was timely filed by the applicable Bar Date.

"Class" shall mean any class of Creditors or Interest Holders as established by this Plan.

"Confirmation Date" shall mean the date the Bankruptcy Court enters the Confirmation Order.

"Confirmation Hearing" shall mean the hearing held pursuant to Section 1128 of the Bankruptcy Code with respect to this Plan.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming this Plan.

"Creditor" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

"Debtor" or "Reorganized Debtor" shall mean 2626 Penn LLC.

"Debtor-In-Possession" shall mean the Debtor in its capacity as debtor in possession in this Chapter 11 Case pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

"Debtor's Bankruptcy Counsel" shall mean McNamee Hosea, PA.

"Disclosure Statement" shall mean the Disclosure Statement for use in connection with this Plan and distributed to holders of Claims entitled to vote for the purpose of acceptance or rejection of this Plan, as further amended, restated or supplemented.

"Disputed" shall mean any Claim or any portion thereof which is not Allowed or Disallowed and which is (i) filed for which no amount was scheduled by the Debtor in the Schedules; (ii) filed in an amount or priority different than was scheduled by the Debtor in the Schedules; (iii) scheduled as unliquidated, contingent or disputed; (iv) a duplicate of another Claim; or (v) the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim. A Claim is also a Disputed Claim if the Debtor has named or names the Holder of the Claim as a defendant or a counterclaim defendant in any legal or other proceeding.

"Disallowed" when used with respect to a Claim, means a Claim that has been disallowed by a Final Order.

"Effective Date" means the date that is fourteen (14) days following the date on which the Confirmation Order becomes a Final Order.

"Estate(s)" shall mean the Chapter 11 bankruptcy estate of the Debtor(s).

"Executory Contract or Unexpired Lease" means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code and includes any modifications, amendments, addenda or supplements thereto or restatements thereof.

"Equity Interest" shall mean the membership interests in 2626 Penn LLC.

"Final Order" shall mean an order or judgment entered on the docket by the Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties (a) that has not been reversed, stayed, modified or amended, and (b) as to which no appeal, certiorari proceeding, reargument or other review or rehearing has been timely requested or, if timely requested, is still pending.

"General Unsecured Claims" shall mean Unsecured Claims that are not entitled to any priority or administrative treatment.

"Holder" shall mean any holder of a Claim in the Debtor.

"Impaired" refers to any Claim or Interest that is impaired within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

"Interest Holder" shall mean any holder of an Equity Interest in the Debtor.

"Petition Date" shall mean October 16, 2024, the date that the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

"Plan" shall mean this Plan of Liquidation, including the exhibits and schedules hereto, either in its present form or as it may be further amended, supplemented or modified from time to time in accordance with the provisions of this Plan, the Bankruptcy Code and the Bankruptcy Rules.

"Priority Unsecured Claim" shall mean all Claims entitled to priority under Section 507 of the Bankruptcy Code, other than Priority Tax Claims.

"Priority Tax Claim" shall mean any Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

"Professional(s)" shall mean any professional employed in the Chapter 11 Case pursuant to Sections 327, 330 or 1103 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses from the Debtor in connection with the Chapter 11 Case pursuant to Sections 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

"Professional Fee Claim" shall mean the Claims of a Professional under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in this Chapter 11 Case.

"Property" shall mean the land and improvements located at 2626 Pennsylvania Avenue, NW, Washington DC 20037.

"Pro Rata" means, unless this Plan specifically provides otherwise, with respect to Claims, the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims in such Class.

"Rejection Claims Bar Date" shall mean the first to occur of (1) a bar date set pursuant to Court order that governs the filing of a claim arising from the rejection of an Unexpired Lease or an Executory Contract; (2) the Claims Bar Date, to the extent that an Unexpired Lease or Executory Contract was rejected prior to the Claims Bar date; or (3) thirty (30) days following the Confirmation Date.

"Rejection Damage Claim" shall mean any Claim for damages arising from or in connection with the rejection of an Executory Contract or Unexpired Lease.

"Secured Claim" shall mean any Claim to the extent that it is determined to be secured pursuant to Section 506(a) of the Bankruptcy Code.

"Unsecured Claim" shall mean any Claim, to the extent that it is not determined to be a Secured Claim.

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS

2.01 Administrative Expenses. To the extent funds exist, each holder of an Allowed Administrative Expense shall be entitled to payment in full in cash upon the later of (a) the Effective Date, (b) the date on which an order of the Bankruptcy Court allowing such Administrative Expense becomes a Final Order, or (c) the date, or dates, on which the Debtor and the Holder of such Allowed Administrative Expense agree or have agreed. Any final request for payment of an Administrative Expense must be filed on or before the Administrative Claims Bar Date. The Administrative Claims Bar Date shall not constitute a bar to Professional Fee Claims, whether accruing prior to or after the Administrative Claims Bar Date. Requests for payment of Administrative Expenses shall be made by motion or application, as applicable, pursuant to the rules of the Bankruptcy Court. The failure to file a motion or application for the allowance of any Administrative Expense on or before the Administrative Claims Bar Date shall constitute a bar against the assertion or collection of any such Administrative Expense, and shall relieve the Debtor's Estate and the Debtor from any liability, responsibility or obligation with respect to such Administrative Expense. As of the date of this Disclosure Statement, the Debtor does not anticipate any Administrative Claims.

2.02 Professional Fee Claims. Professionals or other entities asserting a Professional Fee Claim for services rendered before the Effective Date must, unless previously filed, file and serve on Debtor's Bankruptcy Counsel, the Office of the United States, and to Creditors and parties in interest who have requested notice pursuant to Bankruptcy Rule 2002, an application for final allowance of such Professional Fee Claim no later than thirty (30) days after the Effective Date. Professional Fee Claims shall be paid on the later of: (a) the Effective Date; (b) the date on which an order of the Bankruptcy Court allowing such Administrative Expense becomes a Final Order; or (c) the date, or dates, on which the Debtor and the Professional(s) may agree. Any party in interest may object to a Professional Fee Claim. All fees and expenses earned by the Debtor's professionals subsequent to the Confirmation Date shall be paid by the Debtor as earned and billed without need for further approval of the Bankruptcy Court. The Debtor anticipates a Professional Fee Claim to McNamee Hosea PA, net of retainers, in the amount of approximately $50,000.00.

2.03 U.S. Trustee's Fees. The Debtor shall pay to the United States Trustee, at the time such payments are due, all fees owed under 28 U.S.C. § 1930(a)(6) for disbursements by the Debtor from the Petition Date through the date on which the case is closed or converted to a case under Chapter 7. The Debtor (or, if applicable, the disbursing agent) will be responsible for disbursing any such payments to the Office of the U.S. Trustee as owed, and reporting such disbursements under applicable rules. The Debtor anticipates fees to the Office of the United

States Trustee in the amount of approximately $96,000.00, which shall be paid at closing from the proceeds of the sale of the Property.

2.04 Priority Tax Claims. D.C. Water asserts an Unsecured Priority Tax Claim against the Debtor in the amount of $2,462.40. To the extent the Priority Tax Claim is allowed, absent agreement by the Holder of the Priority Tax Claim, Allowed Priority Tax Claims will be paid in full, at closing on the sale of the Property, such that all Priority Tax Claims are paid within sixty (60) months from the Petition Date as required by the Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests. Administrative Expense Claims are addressed in Article II, above, and have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.

3.01 (Allowed Secured of the District of Columbia) ($510,659.96). Class 1 consists of the Allowed Secured of the District of Columbia in the approximate amount of $510,659.96, plus accrued interest at the legal rate, arising out of unpaid real property taxes against the Property for the pre-petition periods covering September 2023; March 2024 and September 2024. This Class is Unimpaired.

3.02 (Allowed Secured Claim of MainStreet Bank) ($12,604,273.61). Class 2 consists of the Allowed Secured Claim of MainStreet Bank in the principal amount of 12,604,273.61, plus, interest fees and costs if and as permitted pursuant to Section 506(b) of the Bankruptcy Code. To the extent the sale of the Property results in insufficient funds to satisfy the Class 2 Claim in full, the under-secured portion of the Class 2 Claim shall be treated as a Class 3 General Unsecured Claim. The Class 2 Claim is secured by the Property. This Class is Impaired.

3.03 (Allowed General Unsecured Claims) ($4,384,863.18). Class 3 consists of Allowed General Unsecured Claims in the aggregate amount of approximately $4,384,863.18, which is comprised of scheduled and/or filed General Unsecured Claims. As the deadline for (non-governmental) Creditors to file Proofs of Claims remains open through and including February 13, 2025, the universe of Class 3 claims may increase or decrease depending on (i) the amount of Allowed General Unsecured Claims ultimately asserted and Allowed against the Debtor and/or (ii) a deficiency, if any, owed to the Holder of the Class 2 Secured Claim. This Class is Impaired.

3.04 (Equity Interests). As of the Petition Date, the membership interests in the Debtor were owned by Homegrown 2626 LLC (50% Class A Member); VMP 2626 LLC (50% Class A Member); Edson Holdings, LLC (99% Class B Member); and Mark Simakovsky and Sarah Solomon (1% Class B Members). Class 4 is Impaired but cannot vote to accept or reject the Plan.

## ARTICLE IV
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The Plan will be funded from three sources: (1) sale of the Property; (2) sale of personal property; and (3) recoveries from the pursuit of any claims, rights, or other legal remedies the Debtor has or may have in the future, including Causes of Action and Avoidance Actions, if any. A summary of the treatment of Claims and Equity Interests is set forth below. The Debtor, Creditors and parties-in-interest reserve the right to object to the validity, priority or extent of Claims, as set forth in this Plan.

4.01 Treatment of Class 1 (Allowed Secured Claim of the District of Columbia, $510,659.96). Class 1 consists of the Allowed Secured Claim of the District of Columbia in the approximate amount of $510,659.96, plus accrued interest at the legal rate, arising out of unpaid real property taxes against the Property for the pre-petition periods covering September 2023; March 2024 and September 2024. The Class 1 Allowed Secured Claim of the District of Columbia, along with any accrued but unpaid post-petition real property taxes, shall be paid by the Debtor in full at closing from the proceeds of the sale of the Property.

Class 1 is Unimpaired under the Plan, and is not entitled to vote to accept or reject the Plan.

4.02. Treatment of Class 2 (Allowed Secured Claim of MainStreet Bank, $12,604,273.61). Class 2 consists of the Allowed Secured Claim of MainSteet Bank, secured by the Property. As of the Petition Date, MainStreet Bank asserted a Secured Claim in the original amount of $12,604,273.61, evidenced by, among other things, a (i) Promissory Note dated January 20, 2023 in the original principal amount of $11,900,000.00; (ii) Modification to Promissory Note dated on or about January 18, 2024; (iii) Second Modification to Promissory Note dated on or about April 20, 2024; (iv) a Purchase Money Deed of Trust dated January 20, 2023, recorded in the District of Columbia Recorder of Deeds as Document No. 2023005792; and (v) a UCC-1 financing statement recorded in the District of Columbia Recorder of Deeds as Document No. 2023005794

The Class 2 Secured Claim of MainStreet Bank shall be Allowed in the full amount of its Claim, to the extent sufficient sale proceeds exist, and shall be paid in full at closing on the sale of the Property. To the extent there are insufficient funds to pay the Class 2 Allowed Secured Claim in full, the Under-Secured portion of the Class 2 Claim shall be treated as a Class 3 Allowed General Unsecured Claim, and shall be entitled to vote their Under-Secured Claim in Class 3.

MainStreet Bank shall retain its lien until the Class 2 Allowed Secured Claim is paid in full, or otherwise released by MainStreet Bank, whichever comes first. Class 2 is Impaired and is entitled to vote to accept or reject the Plan.

4.03 Treatment of Class 3 (Allowed General Unsecured Claims, $4,384,863.18). Class 3 consists of Allowed General Unsecured Claims filed against and/or scheduled by the Debtor in the amount of approximately $4,384,863.18, consisting of the *estimated* scheduled and/or filed General Unsecured Claims set forth on page 12 of the Disclosure Statement. As the deadline for (non-governmental) Creditors to file Proof of Claims remains open through and including February 13, 2025, the universe of Class 3 claims may increase or decrease depending on (i) the

amount of General Unsecured Claims ultimately Allowed against the Debtor and/or (ii) the amount of MainStreet Bank's under-secured Claim.

In full and final satisfaction and discharge of each Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim shall receive their pro-rata share of the (i) proceeds from the sale of the Property after all Allowed Claims in Classes 1-2 are paid, to the extent sufficient funds exist; (ii) the proceeds of the sale of Personal Property (excepting any personal property that constitutes MainStreet Bank's collateral)[1]; and (iii) to the extent any Causes of Action or Avoidance Actions exist, their pro-rata share of any recovery. Distributions to Holders of Allowed Class 3 Claims shall be made not later than forty-five (45) days following closing on the sale of the Property. Based on the amount of MainStreet Bank's Class 2 Claim, the Debtor anticipates any distribution to Holders of Class 3 Claims to be modest, if any.

The Debtor, Creditors and Parties-in-Interest reserve the right to object to Class 3 Claims and nothing herein shall constitute an admission that these claims are Allowed.

Class 3 is Impaired and is entitled to vote to accept or reject the Plan.

4.04 Treatment of Class 4 (Equity Interests in the Debtor, $0.00). Class 4 consists of Equity Interests in the Debtor. As of the Petition Date, the membership interests in the Debtor were owned 100% by Homegrown 2626 LLC (50% Class A Member); VMP 2626 LLC (50% Class A Member); Edson Holdings, LLC (99% Class B Member); and Mark Simakovsky and Sarah Solomon (1% Class B Members).

The Holders of the Class 4 Equity Interests in the Debtor will not receive distributions under the Plan on account of such Equity Interests. Following closing on the sale of the Property and the distribution of sale proceeds by a designated party pursuant to the Plan, the Equity Interests will be deemed cancelled and extinguished, without any further act or action under any applicable law, regulation, order or rule.

Class 4 is Impaired, but is not entitled to vote because the Holders of Equity Interests in Class 4 will not retain or acquire any property under the Plan on account of their Equity Interests. As such, Class 4 is deemed to reject the Plan.

## Article V
## Disputed Claims and Interests

5.01 Bar Date. Any Claim in existence as of the Bar Date that was not scheduled by the Debtor, or that is scheduled as contingent, unliquidated or disputed, or that varies in amount, nature or priority from that stated in the Debtor's Schedules, must have been asserted, if at all, by the filing of a Proof of Claim with the Bankruptcy Court no later than the Bar Date. The failure to have filed a Proof of Claim by the Bar Date shall constitute a bar against the assertion or collection of any such Claim, and shall relieve the Debtor and the Debtor's Estate from any liability, responsibility or obligation with respect to such Claim. Without limiting the generality

[1] Upon information and belief, not all of the personal property is encumbered by MainStreet Bank's lien. In particular, the furniture and office equipment located in the Property is not encumbered by the Bank's lien.

of the foregoing, no distribution shall be made pursuant to this Plan with respect to any Claim that was not filed by the Bar Date or scheduled by Debtor, or that has been Disallowed by virtue of an objection to such Claim.

5.02 Objections to Claims. Objections to Claims, if any, must be filed no later than thirty (30) days after the Effective Date, unless such deadline is extended by order of the Bankruptcy Court. Settlement of Disputed Claims shall be subject to notice to the Debtor, Debtor's Bankruptcy Counsel, the Office of the United States, and to Creditors and parties in interest who have requested notice pursuant to Bankruptcy Rule 2002.

5.03 Distributions on Account of Disputed Claims. Except as may otherwise be ordered by the Bankruptcy Court or authorized under the terms of the Plan, the Debtor shall not make distributions to Holders of Disputed Claims until the Disputed Claim become an Allowed Claim. The Debtor shall make no distributions to holders of Disallowed Claims.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumption and Rejection of Executory Contracts and Unexpired Leases. Unless previously rejected by order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, or by operation of law, or assumed through the provisions of the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases shall be rejected pursuant to Bankruptcy Code section 365. The Confirmation Order shall constitute an order of the Bankruptcy Court approving rejection of all Executory Contracts and Unexpired Leases pursuant to section 365 of the Bankruptcy Code.

In addition to the foregoing, all insurance policies shall remain in full force and effect unless otherwise validly terminated, and issuers of such policies of insurance shall remain responsible for claims in accordance with the terms and provisions of such insurance policies. The insurance policies that have expired as of the Confirmation Date (whether entered into prior or subsequent to the Petition Date) are not executory contracts subject to assumption or rejection. The issuers of insurance policies shall be responsible for continuing coverage obligations under such insurance policies, regardless of the payment status of any retrospective or other insurance premiums.

6.02 Claims Arising from the Rejection of Executory Contracts and Unexpired Leases. Any Rejection Damage Claim arising from the rejection of an Executory Contract or Unexpired Lease by operation of the Plan must be asserted by the filing of a Proof of Claim with the Bankruptcy Court, and the service of such Proof of Claim on the Debtor's Bankruptcy Counsel. Such Proof of Claim must be filed with the Bankruptcy Court, and received by Debtor's Bankruptcy Counsel no later than the Rejection Claims Bar Date. Any Allowed Rejection Damage Claim shall be treated as a Class 3 Claim in accordance with Article IV of the Plan. The failure to file or deliver a Rejection Damage Claim by the Rejection Claims Bar Date shall constitute a bar against the assertion or collection of any such Claim, and shall relieve the Debtor and the Debtor's Estate from any liability, responsibility or obligation with respect to such Claim. Without limiting the generality of the foregoing, no distribution shall be made pursuant

to the Plan with respect to any Rejection Damage Claim that is not filed and delivered by the Rejection Claims Bar Date.

## ARTICLE VII
## IMPLEMENTATION OF PLAN

7.01 Revesting of Assets. *Except as expressly set forth in the Plan*, on the Effective Date, all assets of the Debtor shall be revested in the Reorganized Debtor as provided in section 1141 of the Bankruptcy Code free and clear of all liens, security interests, recording taxes, and other interests, choate or inchoate, resulting from all Claims and Equity Interests of all Creditors, Interest Holders and parties-in-interest. For the avoidance of doubt, except as otherwise set forth in this Plan or by Order of the Bankruptcy Court, the Holders of Allowed Secured Claims shall retain their liens until such Secured Claims are paid in accordance with the terms of the Plan.

7.02 Funding. The Plan will be funded from three sources: (1) sale of the Property; (2) sale of personal property; and (3) recoveries from the pursuit of any claims, rights, or other legal remedies the Debtor has or may have in the future, including Causes of Action and Avoidance Actions, if any.

7.03 Distributions. Except with respect to Holders of Allowed liens which shall be paid at closing pursuant to the Plan or Order of the Bankruptcy Court, and to the extent sufficient sale proceeds exist, the Debtor shall make all distributions under the Plan in cash made by check drawn on a domestic bank or by wire transfer from a domestic bank. To the extent sufficient sale proceeds exist and except as otherwise provided under the Plan, the distributions will be made to Holders of Allowed Claims at each Holder's address set forth on the Schedules filed with the Bankruptcy Court unless superseded by a different address set forth in a timely filed proof of Claim filed by the Holder or if the Debtor have been notified in writing of a change of address at the following address.

7.04 Corporate Action. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the members, stockholders, directors or comparable governing bodies of the Debtor, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the state in which the Debtor is incorporated or organized, without any requirement of further action by the members, stockholders or directors (or other governing body) of the Debtor. On the Effective Date, or as soon thereafter as is practicable, (i) the Debtor's articles of incorporation and bylaws, or if applicable operating agreement, shall, to the extent necessary, be amended to comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code and otherwise in a manner not inconsistent with the Plan, and (ii) the Debtor shall take all actions necessary to implement the Plan.

7.05 Small Distributions and Unclaimed Funds. The Debtor shall not be required to make a distribution on account of any Claim, which distribution would be less than $50.00 in amount. Subject to the notice provision set forth herein, any payment that is not negotiated one-hundred eighty (180) days after the date on which it is mailed may be stopped, and the funds made available for distribution to other Creditors pursuant to the Plan. Any payment that is returned as undeliverable may be voided, and the funds represented by such payment made

available for distribution to other Creditors pursuant to the Plan. In the event that payment of an initial distribution is returned as undeliverable or is not negotiated within one-hundred eighty (180) days after it is mailed, the Debtor shall not be required to make any further distributions to such Creditor under the Plan, and the funds that otherwise would have been distributed to such Creditor shall be made available for distribution to other Creditors pursuant to the Plan.

7.06 Preservation of Rights of Action. Any action by the Debtor to recover property of the estate and avoid any transfer pursuant to §§542, 543, 544, 547, 548 or 549 of the Bankruptcy Code, if not already completed, shall be commenced by the filing of a complaint pursuant to Bankruptcy Rule 7003 within thirty (30) days following the Effective Date.

The Debtor does not believe any Causes of Action or Avoidance Actions exist, but will continue to investigate the existence of such claims and Causes of Action. The two-year bar to commence Causes of Action and Avoidance Actions is October of 2026.

7.07 Set off and Recoupment. The Debtor may, but shall not be required, to set off against any Claims (for purposes of determining the Allowed amount of such Claim on which distribution shall be made) of any nature whatsoever that the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim the Debtor may have against the Holder of such Claim.

7.08 Disputed Claim Procedure.

***(a) Authority to Prosecute Objections***

After the Effective Date, the Debtor, Creditors and parties-in-interest shall be entitled to object to all Claims. Objections to Claims, if any, must be filed no later than thirty (30) days after the Effective Date, unless such deadline is extended by order of the Bankruptcy Court. Settlement of Disputed Claims shall be subject to notice to the Debtor, Debtor's Bankruptcy Counsel, the Office of the United States, and to Creditors and parties in interest who have requested notice pursuant to Bankruptcy Rule 2002.

***(b) No Distributions on Disputed or Disallowed Claims***

Except as may otherwise be ordered by the Bankruptcy Court or authorized under the terms of the Plan, the Debtor (or, if applicable, the disbursing agent) shall not make distributions to Holders of Disputed Claims until the Disputed Claim become an Allowed Claim. The Debtor (or disbursing agent) shall make no distributions to holders of Disallowed Claims.

***(c) Late Claims Void***

Unless otherwise expressly Allowed by Order of the Bankruptcy Court or otherwise provided by the Plan, any Claim filed after the applicable Claims Bar Date will be void and of no force or effect, and will receive no distributions under the Plan.

7.09 Conditions Precedent to the Effective Date. The following are conditions precedent to the Effective Date of this Plan: (a) the Bankruptcy Court has entered the Confirmation Order in a form reasonably acceptable to the Debtor; and (b) the Confirmation Order becomes a Final Order. The Debtor, in its sole discretion, may jointly waive any of the foregoing conditions and deem this Plan effective without their occurrence.

7.10 Retention of Jurisdiction. The United States Bankruptcy Court shall retain exclusive jurisdiction after Confirmation of this Plan of all matters arising from or related to this Plan, for as long as necessary for the purpose of §§105(a), 1127, 1142(b) and 1144 of the Bankruptcy Code and for, inter alia, the following purposes:

(a) hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

(b) hear and determine objections to Claims (whether filed before or after the Effective Date), or requests for estimation of any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

(c) estimate any Claim at any time, including, without limitation, during litigation concerning any objection to such Claim, including any pending appeal;

(d) ensure that distributions to holders of Allowed Claims are accomplished as provided in this Plan;

(e) enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f) issue or construe such orders or take any action as may be necessary for the implementation, execution, enforcement and consummation of this Plan and the Confirmation Order, and hear and determine disputes arising in connection with the foregoing;

(g) hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement, or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

(h) hear and determine all applications for Professional Fee Claims;

(i) hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, and the documents or instruments executed in connection with this Plan;

(j) hear and determine any action concerning the recovery and liquidation of the Estate's Assets, wherever located, including without limitation, litigation to liquidate and recover the Estate's Assets or other actions seeking relief of any sort with respect to issues relating to or affecting Estate Assets;

(k) hear and determine any action concerning the determination of Taxes, Tax refunds, Tax attributes, and Tax benefits and similar or related matters with respect to the Debtor or the Estate including, without limitation, matters concerning federal, state, and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(l) hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and

(m) enter the Final Decree.

## ARTICLE VIII
## EFFECTS OF CONFIRMATION

8.01 Discharge of Claims and Interests. In accordance with Section 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in the Chapter 11 Case. Except as otherwise expressly provided by the Plan or Order of the Bankruptcy Court, all property of the Debtor's estate shall, upon entry of the Confirmation Order, be vested in the Debtor and will be retained by the Reorganized Debtor on the Effective Date, subject to liquidation as provided under the Plan. *Except as otherwise set forth in the Plan*, all such property shall be free and clear of all Claims and the Interest of Creditors and other parties-in-interest.

8.02 Provisions Cumulative. The provision set forth in Sections 8.01 are in addition to, and not in lieu of, any other release or exculpation separately given or received, conditionally or unconditionally, to or from any other person or entity.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.01 Modification of Plan. The Debtor reserves the right to modify this Plan pursuant to Section 1127 of the Bankruptcy Code.

9.02 Revocation of Plan. The Debtor may revoke or withdraw this Plan at any time prior to the Effective Date. If this Plan is revoked or withdrawn, or the Confirmation Order is not entered, this Plan shall be null and void.

9.03 Computation of Time. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.04 Default. An event of default under the Plan shall occur if the Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than ten (10) days after the time specified in the Plan for such payment or other performance ("Event of Default"). Upon the occurrence of an Event of Default, the Creditor affected by the Event of Default shall provide Debtor's attorney a written notice (by e-mail only)

of default and a ten (10) day opportunity to cure or to move to obtain from the Bankruptcy Court an extension of time to cure the default, or a determination that no default occurred. In the event the Debtor fails to cure the default or seek and obtain an extension to cure from the Bankruptcy Court, the Creditor(s) shall be entitled to seek conversion of the Chapter 11 Case to Chapter 7, or, alternatively, enforce its/their state court rights and remedies outside of Bankruptcy Court.

9.05 Notices. On and after the Effective Date, all notices, requests and distributions to a Holder of a Claim or Equity Interest shall be sent to the last known address of (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Claim filed by or on behalf of such Holder, or (ii) in the absence of an address provided under (i), the address listed in the Debtor's Schedules. Any Holder of a Claim or Equity Interest may designate another address by providing the Debtor written notice of such address, which notice will be effective upon receipt by the Reorganized Debtor of the written designation.

2626 Penn LLC

c/o VPM 2626 LLC
7315 Wisconsin Avenue
Suite 400W
Baltimore, MD 20814

With a copy to:

Steven L. Goldberg, Esquire
Craig M. Palik, Esquire
McNamee Hosea, PA
6404 Ivy Lane, Suite 820
Greenbelt, Maryland 20770

9.06 Section 1146 Exemption. Pursuant to § 1146(a), (i) the issuance, distribution, transfer or exchange of interests or other Property; (ii) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of or in connection with the Committee Plan, the Confirmation Order, and any related documents; (iii) the making, assignment, modification or recording of any lease or sublease; (iv) the sale or transfer of assets shall be deemed exempt from all taxes arising from such sale or transfer which would otherwise be imposed at the time of transfer or sale, which are determined by consideration for or value of the Property being transferred, or as a percentage thereof, including taxes imposed by the State or other applicable law, or (v) the making, delivery or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with the Creditor's Plan, the Confirmation Order, any related documents or any transaction contemplated above or any transactions arising out of, contemplated by or in any way related to the foregoing. or as set forth in the Creditor's Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby

are, directed to forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Provided closing on the sale of the Property occurs after entry of an Order confirming the Plan, the Debtor intends to seek the benefits of Section 1146 of the Bankruptcy Code.

9.07 Release and Exculpations relating to the Chapter 11 Case. Neither the Debtor nor any of its members, directors, officers, employees, members, attorneys, attorneys of the members, consultants, advisors and agents (acting in such capacity) (collectively, the "Exculpated Parties") shall have or incur any liability to any Person or Entity for any act taken or omitted to be taken in connection with the commencement of the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan, any other plan of reorganization or any compromises or settlements contained herein, any disclosure statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the transactions set forth in the Plan or in connection with any other proposed plan; provided, however, that the foregoing provisions shall not affect the liability that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Each of the foregoing parties in all respects shall have been and shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities during the Chapter 11 Case and under the Plan. The rights granted under this paragraph are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

9.08 Severability. If any provision of this Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provision of this Plan.

9.09 Manner of Payment. Payments provided hereunder may be made, at the option of the Debtor, in cash, by wire transfer or by check drawn on any money market center bank.

9.10 Further Actions and Assurances. All persons bound by this Plan, including without limitation all Creditors and parties in interest and persons to be paid under or pursuant to this Plan, shall execute and deliver such releases and documents of transfer and assignment as the Debtor may reasonably request to effectuate the terms of this Plan. In addition to other remedies, the Debtor may condition or withhold payment to any person who fails to execute and deliver such documents or instruments as the Debtor may reasonably request to effectuate the terms of this Plan.

Dated: January 14, 2025

Respectfully submitted,

MCNAMEE HOSEA, P.A.

**/s/ Steven L. Goldberg**
Craig M. Palik (Fed Bar No. 15254)
Steven L. Goldberg (Fed Bar No. 28089)
6404 Ivy Lane, Suite 820
Greenbelt, Maryland 20770
Telephone: (301) 441-2420
Facsimile: (301) 982-9450
cpalik@mhlawyers.com
sgoldberg@mhlawyers.com
*Attorneys for 2626 Penn LLC*